CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 13 2020

JULIA C. DUDLEY, CLERK
BY: A. Geeson
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

MAURICE J SINKFIELD

Plaintiff,

vs.

UNITED STATES OF AMERICA et al.,

CASE No.: 7:20-cv-149

Judge James P. Jones

## COMPLAINT

Comes now the Plaintiff, maurice J sinkfield, natural person, before this Honorable Court, with his Amended Complaint, pursuant to the Court's April 29, 2020 opinion and order, alleges and Claims as follows.

The Plaintiff, maurice J sinkfield c/o: UNITED STATES PENITENTIARY LEE P.O. BOX 305 Jonesville, VIRGINIA 24263.

The Defendants, UNITED STATES OF AMERICA: Officer T. Brooks; Officer S.W. White; Officer S. White; Officer S. Turner; Officer L. Hornsby; Officer C. Newman; Officer T. Thomas; Officer L. Bailey; Officer M. Hamilton; Officer C. Hamilton; Officer N. Smith; Officer B. Calton; Lt. S. Lively; Lt. P. Necessary; Lt. C. Davis; Lt. J. Bowles; Lt. A. Johnson; Officer J. Martin; Lt. J. Nichols; Officer Meade (Nurse Pract-

itioner); Officer L. Collins; Officer J. Brown, United States Penitentiary Lee P.O. Box 900, Jonesville, Virginia 24263-0900

1. The Plaintiff, maurice J sinkfield, a natural person (human being) is in the custody, under the control of the United States government, was subjected to cruel, inhumane, degrading treatment and torture, while at the United States Penitentiary Lee, under the Judgment of the U.S. District Court N.D. Ohio eastern division (cleveland) case no.: 1:16-cr-146.

2. On July 30, 2019 to August 02, 2019 the defendants Principle place of business is in Jonesville, Virginia at U.S. P. Lee.

3. This is a civil lawsuit being Prosecuted within this Honorable Court's Common-Law Jurisdiction. In this case the defendants did Knowingly and intentionally violated the Constitutions' 8 Eighth Article and Eighth Amendment Commands against Cruel and unusual punishment. The defendants are also charged civil rights violations. The Plaintiff, maurice J sinkfield, certify that the matter in controversy exceeds the sum or value of eighty-five thousand U.S. dollars ($85,000.00) exclusive of interest and cost, and is between the Plaintiff, maurice J sinkfield, a natural person (human being) and the Defendants, United States of America etal.,

4. This Honorable Court has original Jurisdiction over this Case in accordance with Title 28 U.S.C. § 1331 chapter 85 Part IV. This civil action at common-law is arising under the U.S. Constitution. The events giving rise to the claims asserted herein occurred within the special Maritime and Territorial Jurisdiction of the United States. 18 U.S.C. § 7(3), to wit: United States Penitentiary Lee. Jurisdiction and Venue is proper.

5. Jury Trial Demand, the plaintiff, maurice j sinkfield, respectfully moves this Honorable Court for jury Trial in accordance with the Constitutions's Article VIII (7) and Amendment VIII (7). This is a civil suit at common law, where the value in controversy exceed twenty dollars.

6. Claim for Relief, the Defendants are liable to the Plaintiff maurice j sinkfield, for damages and injuries thereby caused in excess of or in the amount of $666,666,666.00 lawful money of the United States, a Dollar is 371.25 grains of fine silver, or the equivalent of Gold, notes or other instruments acceptable to maurice j sinkfield.

8. Federal Tort Claim 28 U.S.C.S. § 2671-2680. Title 42 U.S.C. § 1997e (e) also applies; and 28 U.S.C. § 1346 (b)(1)

9. Exhaustion of Administrative Remedies, Plaintiff sought to exhaust his administrative remedies as required by BOP Policy and by federal law. U.S.P. Lee prison staff case managers B. Calton, J. Sexton and K unit manager Mr Mullins would not provide plaintiff any administrative remedy forms after plaintiff multiple electronic "request to staff" made in K Unit at U.S.P Lee. The plaintiff understands that he must prove that the administrative remedy forms (bp 8, bp 9, bp 10 and bp 11) were not provided to him by prison staff after his multiple Electronic and paper written "request to staff. The plaintiff provided the Court with a copy of his 02/26/2020 "request to staff" wherein he asked for the administrative remedy forms and he disclosed that he has previously made requests multiple times since August 2019 but was never provided the forms. The copy of the 02/26/2020 "request to staff" was mail to the Court on April 23, 2020 certified mail #7019 1120 0000 6164 6916. When a inmate [repeatedly] make requests to prison staff for administrative remedy form(s) and staff fails to respond preventing the inmate from filing the administrative

remedy request with the proper federal agency for resolution, the Court can and should find that the inmate exhausted his available administrative remedies. See Foulk v. Charrier, 262 F. 3d 687, 698 (8th cir. 2001)(holding that inmate exhausted his available administrative remedies, where his testimony established that prison officials failed to respond to his informal (request) resolution request, there by preventing him from filing a grievance or appeal). And the Supreme Court made it clear that the exhaustion requirement of the PLRA was mandatory, with one exception: Unavailability. See Ross v. Blake, 195 L. Ed. 2d 117 at 1852 (2016). And also "a prisoner need not exhaust remedies if they are not available." Ross at 1855 also see Dole v. Lappin, 376 F. 3d 652, 656 (7th cir. 2004) mitchell v. Horn, 318 F. 3d 523, 529 (3d cir. 2003)(inmate lacked available remedies for exhaustion purpose where inmate was unable to file a grievance, because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F. 3d 736, 740 (8th cir. 2001) "(allegations that prison officials failed to respond to his written requests for grivance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies)" quoting Routh v. Young, 2019 U.S. Dist. Lexis. 114516 (4th cir. 2019).

In Closing, see Exhibit A the unanswered "request to staff" dated 02/26/2020 addressed to building three Unit Manager and Case Manager. All other electronic "request to staff" were deleted, making them not available for printing, two months after being made by plaintiff, who was place on institution lockdown status which prevented plaintiff from printing all the unanswered "request to staff" before they were deleted. All paper "request to staff" made by the plaintiff, wherein he requested the administrative remedy forms were not returned, nor did the Unit Manager Mr. Mullins and Case Managers B. Calton and J. Sexton allow Plaintiff to review his "Central File" to discovery all information including the "request to staff"s he made which should be in the "Central File" in accordance with BOP Policy. Therefore, Please allow Plaintiff to proceed to Jury trial.

10. STATEMENT OF CLAIM, On July 30, 2019 maurice j sinkfield was transported to the UNITED STATES PENITENTIARY LEE in Jonesville, Virginia by the FEDERAL BUREAU OF PRISONS. During the intake process in the Receiving and Discharge Department, officer S. Depriest asked maurice j sinkfield to provide MAURICE J SINKFIELD'S social security Account Number, and to provide his written and human signatures, that would have been placed on the instrument offerred to maurice j sinkfield by officer S. Depriest. The Plaintiff, maurice j sinkfield then denied officer S. Depriest's request after she refused "her obligation" to provide maurice j sinkfield with full disclosure of the instrument that she asked maurice j sinkfield to fill out and sign, and after she refused to inform maurice j sinkfield of exactly what the federal agency was going to do with the Social Security Account Number, written and human signatures. It is officer S. Depriest's duty, upon her request to individuals to disclose their Social Security Account Numbers, to inform the individuals whether (1) Disclosure is mandatory or voluntary, (2) By what statute or other authority such number is solicited, and (3) what uses will be made of it. See 68 FR 32985, 32993, June 3, 2003, added Part 802.

Instead, Officer S. Depriest became very angry with maurice j sinkfield because he would not fill out and sign the instrument that she offerred to him. Officer S. Depriest then demanded maurice j sinkfield to follow her to a small office, located near her work station in the receiving and discharge department, to talk to someone else about the instrument she offerred to him and why he will not accept it. Upon their arrival, in the office Special Investigation Service or SIS Lt J. Bowles, Officers P. Necessary, and J. Sexton, Officer S. Depriest began telling them "maurice sinkfield does not want to sign anything and does not want to provide the Social Security Account Number to us." Lt J. Bowles then asked maurice j sinkfield to come into the office and sit in the chair against the wall that faced the desk where SIS P. Necessary, J. Sexton sat behind and Lt J. Bowles stood

next too. After maurice j sinkfield sat in the chair sis P. Neccessary then asked maurice j sinkfield "why won't you provide us with Social Security Account Number and your signatures?" Then maurice j sinkfield answered "the instrument that officer S. Depriest offerred to me cannot be accepted because Officer S. Depriest would not fully disclose the instrument, its purpose, and what uses will be made of the Social Security Account Number and by what statute, or other authority the Social Security Account Number is solicited." Lt J. Bowles then said to maurice j sinkfield "give us the Social Security Account Number and sign the document." And maurice j sinkfield then replied stating "without full disclosure in writing, and without my mutual assent I do not sign instruments and provide private information." Lt J. Bowles then said "I don't care, sign the document and fill it out." And maurice j sinkfield then said "I guess my only option remaining is to use the administrative remedies available to resolve this matter."

Lt J. Bowles then became angry with maurice j sinkfield and screamed at maurice j sinkfield, telling him "stand up, turn around, and put your hands on the wall!" Lt J. Bowles then placed maurice j sinkfield under arrest for not providing the Social Security Account Number and for not signing the instrument offerred to him by officer S. Depriest.

Lt J. Bowles then secured handcuffs on maurice j sinkfield's wrisks and restraining maurice j sinkfield's hands behind his back. Lt J. Bowles and SIS P. Necessary then began violently attacking maurice j sinkfield, and inflicting serious bodily harm upon maurice j sinkfield's body. SIS P. Necessary violently grabbed and squeezed the neck of maurice j sinkfield causing bones to crack and pop resulting in intense pains and shortness of breath. Lt J. Bowles violently and forcefully grabbed maurice j sinkfield's body and forced him into a standing face down position. And both Lt J. Bowles and SIS P. Necessary then forced maurice j sinkfield to walk force down backwards out of

the office and into the receiving and discharge department where officer S.W. White approached and asked SIS P. Necessary "do you want me to get him?" SIS P. Necessary then answered "yes." Officer S.W. White then grabbed maurice J sinkfield's neck and choked him cutting off his air supply and induring his neck. Lt J. Bowles and officer S.W. White then forced maurice J sinkfield to walk back-wards facedown from the receiving and discharge department to the Special Housing Unit hereinafter reffered to as "SHU". Lt J. Bowles did inflict intense pain upon maurice J sinkfield's left arm and wrisks by twisting the stainless steel handcuffs and forcefully pulling the left arm.

Upon entering the SHU's holding cell officer S.W. White rammed the left side of maurice J sinkfield's face and head into the rear wall In the holding cell which did cause maurice J sinkfield to suffer a concussion, possible bleed-ing in his brain; a bleeding cut on the left side of his face. The impact force and concussion caused maurice J sinkfield to fall to his knees. Lt J. Bowles, Officers S. White and S.W. White then grabbed maurice J sinkfield's arms, neck and the back of his shirt and then they pushed maurice J sinkfield's head towards the floor causing his face and head to violently slam against the floor in the holding cell. This caused maurice J sinkfield to suffer a second concussion, shortness of breath, blurred vision; head, face, neck, and back intense pains.

At that time Lt J. Bowles asked maurice J sinkfield "are you gonna fill out and sign that document now?" "No" answered maurice J sinkfield. Lt J. Bowles then said to maurice J sinkfield "you are gonna stay back here (SHU) with us until you fill out and sign that document."

The officers then lifted maurice J sinkfield to his feet and placed him against the rear wall; grabbed the back of

maurice J Sinkfield'neck, pushed his face and head against the wall; And the officers then snatched maurice J Sinkfield's pants, socks, shoes and underwear off his body leaving him naked from his waist to his feet. One of the officers then instructed maurice J Sinkfield to "lift up your foot" and then when maurice J Sinkfield did so he looked down to his feet and saw the officer placing a pair of pink woman's panties onto him, then maurice J Sinkfield hereinafter reffered to as "maurice" asked the officers "why are yall putting panties on me?" one of the officers answered saying "easy access to your black ass" then a officer Jammed a pointed obdect into maurice's rectum which then scraped his anus. After maurice felt the sexual assault he turned his head around to see which officer did it (the sexual assault), but Lt J. Bowles and officers attacked maurice, they grabbed maurice's neck choked him and turned his face back to the wall so maurice could not see their names and faces. The officers then pushed maurice down to his knees, then slammed maurice's head and face against the rear wall in the holding cell, then officers placed stainless steel shackles on maurice's legs Just above his ankles, officers then removed maurice's shirt and place a blue paper shirt on him and a steel chain, stainless steel handcuffs with a small steel box connected to the chain, and a key lock securing the restraints. The chain, handcuffs and shackles inflicted intense Pains upon maurice's body because officers placed them on maurice's body to tightly.

After the officers were done securing the restraints Lt J. Bowles said to maurice "your gonna stay like that untill you fill out and sign that document." Then officers instructed maurice to stay on his knees and face the wall until they exit the holding cell. 15 minutes to after they exited they holding cell a officer did a 15 minute check and asked maurice "you alright" and maurice answered saying "no" then the officer said "alright we will be back in a few minutes." Between 30-45 minutes later Lt J. Bowles and 3 officers returned to the SHU holding cell and they instructed maurice to get on his knees against the wall and face the wall.

Lt J. Bowles and the officers lifted maurice to his feet and forced maurice to walk as the stainless steel shackles, handcuffs and chain began cutting through maurice's skin, to the nurse's station. After maurice, the 3 officers and Lt J. Bowles arrived at the nurses station Lt J. Bowles instructed maurice to get on the examination table. After maurice got onto the examination table the nurse entered the station and began the examination. The nurse cleaned the open cut and blood on maurice's face, then the nurse checked maurice's vitals (blood pressure, oxygen levels etc...), then the nurse asked maurice to report any induries that he have. Then maurice reported to the nurse that he is suffering head, neck, back, knees, rectum and anal induries. The nurse then determined that the what maurice reported to him is a PREA matter and he exited the nurse's station to retrieve a camera recorder.

While the nurse was getting the camera recorder 3 officers stayed with maurice in the nurse station. Two of the three officers threatened maurice, telling him to not report any induries on camera or they will continue to cause physical bodily harm to him (maurice). Lt J. Bowles and the nurse returned to the nurse's station. The nurse with camera in his hand recording asked maurice "do you have any induries?" and maurice answered "yes" and reported his induries and the sexual assault. And maurice, on camera, requested the presence of a supervisor other then Lt J. Bowles. After the nurse stopped recording and exited the nurse's station Lt J. Bowles instructed the three (3) officers to physically and violently cause serious body harm to maurice.

One officer violently grabbed maurice's neck and choked maurice, cutting off his air supply. The second officer grabbed maurice's left arm and forcefully pulled maurice off the examination table. The third officer grabbed maurice's body and forcefully pushed maurice facedown in a standing position with maurice's knees bent; and turned maurice backwards. The officers then forced maurice to walk backwards in shackles, hand-cuffs and a chain that was placed on him very tightly which

inflicted intense pains to and caused damages to maurice's wrisks, Legs, Ribs and skin.

The officers and maurice exited the nurse's station and entered the SHU's hallway. While walking, the officers said to Maurice "your a stupit fucking nigger," and "were gonna beat your ass all day and night," and "your going to learn to keep your mouth shut and to do what your told nigger," and "your gonna die slow nigger," and "I'm gonna stick something up your ass now."

Upon entry in the SHU's A range holding cell Z01-101 the officers began torturing maurice. The officers violently slammed maurice to his knees and rammed maurice's head and face against the rear wall in the holding cell, then the officers punched, kicked and stomped maurice's back, ribs, head, legs, chest, stomach and buttocks. The officers each grabbed maurice's throat and choked him cutting of maurice's air supply. The officers stepped on and smashed maurice's toes using the bottom front part of their boots. The unknown officers repeatedly rammed maurice's head and face against the rear wall and floor in A range hold cell Z01-101 causing maurice to suffer multiple concussions. The attack lasted for about 30 minutes then the officers exited the holding cell leaving maurice laying on the floor in need of medical attention.

Two (2) hours later 8 to 10 officers entered the holding cell. Among the officers were S. White; C. Hamilton; T. Brooks; and S. Turner. The officers prior to entering instructed maurice to get on his knees and face the wall and after maurice did what officers instructed him to do the officers charged into the holding cell and rammed the force team's sheild against maurice's back, neck and head. The force from the impact caused maurice's face and head to slam against the wall. This caused maurice to suffer another concussion and the impact from the force team's sheild caused maurice to suffer back, neck and chest pains and induries. The officers used the

Force team's sheild to harm maurice. The officers punched maurice's head, face, and ribs; and the officers kicked maurice's legs and feet; and smashed maurice's toes by standing on and stomping on maurice's toes. The officers yanked, pulled and twisted the stainless steel handcuffs, shackles and chain which tore through maurice's skin which caused bleeding sores and intense pains. The officers attack lasted for about 30 minutes.

During this attack officers told maurice, that since he reported the sexual assault and since he did not fill out and sign the document like Lt. J. Bowles told him to do they are going to physically beat him all day and night. After officers were done inflicting serious bodily harm upon maurice they exited the holding cell, and again, leaving maurice on the floor of the cell in need of medical attention.

Every two (2) hours for the rest of the day and the night, the officers tortured maurice. The unknown and known (officers mentioned above) officers inflicted serious bodily harm upon maurice by ramming the force team's sheild against maurice's head, neck and back; by punching and kicking maurice's face, head, legs and left and right ribs; by stomping maurice's feet and toes; by yanking, pulling and twisting the stainless steel handcuffs, shackles and chain that were placed on maurice's legs, wrisk, and stomach and ribs very tightly which ripped through maurice's skin causing bleeding and intense pains; The officers deprived maurice of the right to eat food, drink fresh water, daylight, fresh air; to use the bathroom, medical attention, sleep, have bed and sheets, clothing, shoes, legal material; and to administrative remedies.

During the beatings of maurice in the Arange (A range) holding cell Z01-101, officers would asked maurice "who is the president?" Maurice answers "Donald Trump" the officers would then say "good answer." The officers then would stop beating maurice after he answer the questions correctly.

Later that night maurice fell asleep on the floor inside the holding cell. He had no bed and sheets and he (maurice) was

still in restraints with no clothing on. Officer T. Thomas approached the observation window, while doing the 15 minute check and noticed maurice was sleeping. Officer T. Thomas then banged on the window to wake maurice up, but maurice remained on the floor and fell back asleep. About an hour later Lt S. Lively; Officer T. Thomas and Officer C. Newman entered the holding cell Z01-101. Officer C. Newman ran towards and tackled maurice while he was on his knees facing the wall defenseless in shackles, handcuffs and chain. Lt. S. Lively used the force team's sheild to strike maurice's head and upper body. Officer T. Thomas and C. Newman punched and kicked maurice's head, ribs and legs while Lt S. Lively smashed maurice by holding the force team's sheild on maurice's chest and useing his body weight. Officers T. Thomas and C. Newman lifted maurice to his feet and placed him against the rear wall. Lt S. Lively placed the force team's sheild back onto maurice's chest, Officer C. Newman smashed maurice's face against the wall, Officer T. Thomas then grabbed and held against maurice's chest, the force team's sheild and then Lt S. Lively re adjusted the shackles and handcuffs making them tighter which did cause more intense pains and swelling to maurice's legs and wrisks.

While Lt S. Lively was re adjusting the handcuffs he punched maurice's penis two (2) times. Lt S. Lively explained to maurice that during 15 minute checks, when officers approach the window and look in the cell he (maurice) better not be sleep or they (Lt S. Lively and Officers) are going to beat him (maurice) more extremely harsher. The beatings continued every two (2) hours for two (2) days and twelve hours.

The next day (July 31, 2019), maurice was sitting on the floor leaning against the rear wall in cell (Z01-101) waiting for the next unlawful beating by U.S.P. Lee's all white officers and supervisors. Officer C. Hamilton approached the observation window told maurice "Face the wall on your knees." After maurice did what Officer C. Hamilton instructed, 8 to 10 officers and supervisors entered the cell rammed the

force team's sheild into maurice's head, neck and back and that caused maurice's face, head and chest to forcefully and violently hit the wall resulting in maurice experiencing difficulty breathing, chest, back and head pains; concussions and vision and hearing lost.

The Officers (C. Hamilton, L. Hornsby, T. Brooks, J. Martin, S. White and many more officers) unlawfully beat maurice. The officers grabbed maurice's throat and choked him cutting off his air supply. The officers punched maurice's head, face, ribs and neck. The officers kicked and stomped maurice's legs and feet. The officers pulled and yanked the handcuffs, shackles and the chain repeatedly which caused the stainless steel handcuffs, shackles and the chain to cut deeper into maurice's flesh. The officers repeatedly slammed the bottom edge of the force team's sheild into the back of maurice's legs and feet. The officers actions inflicted intense pains and serious bodily injuries to maurice's body. And the attacks, by the officers, lasted for 20-30 minutes; then the officers exited the cell leaving maurice on the floor in need of medical attention.

At around 6:25 am, on July 31, 2019, maurice had fallen asleep. Officer M. Hamilton approached the observation window and observed maurice sleeping laying on his back on the floor. He (officer M. Hamilton) then reported this to Lt S. Lively who then entered the cell with officers T. Thomas, C. Newman; and, they beat maurice for falling asleep again.

Two (2) hours later, first shift officers and Lt J. Nichols entered the cell (holding cell Z01-101 A range.); and, they began their physical assault on maurice's handcuffed, shackled and chained body inflicting serious bodily injuries and harm. Lt J. Nichols, while officers were beating maurice, repeatedly told maurice not to mention the sexual assault to the administrative staff during their rounds (special Housing Unit weekly checks). Lt J. Nichols made it very clear and obvious, that if maurice mention anything about the July 30, 2019 sexual assault by officers to anyone they (Lt J. Nichols and SHU Officers) are going to beat maurice again and keep maurice in restraints for another 24 hours or more. Lt J. Nichols then kicked maurice's right leg. Lt J. Nichols and officers then exited the holding cell; and, from

the observation window Lt J. Nichols threatened to harm maurice if he did not lay on the mat that officers brought into the holding cell during the physical assault of maurice.

The mat was unsanitary, the mat smelled like old dirty mop water, urine and feces. Lt J. Nichols ordered maurice to lay on the mat and to not inform the U.S.P. Lee's administrative staff personnel and warden of the sexual assaults and beatings.

At around 11:30 am or two hours later the U.S.P. Lee's administrative staff entered the SHU's A range and maurice attempted to speak to them to alert them about the sexual assaults and the beatings; But, Lt A. Johnson told the staff personnel to not talk and listen to maurice and the administrative staff ignored and walked away from maurice.

At around 12:35 pm or a hour later Lt J. Bowles, Lt A. Johnson, Officer L. Bailey (staff Psychologist); SHU officers and multiple unknown staff entered the A range holding cell Z01-101. After SHU officers placed the force team's sheild against maurice's back while he faced the rear wall on his knees, officer L. Bailey allegedly began a psychology restraint review on maurice. Officer L. Bailey asked maurice questions regarding the July 30, 2019 sexual assault. And maurice answered all officer L. Bailey's questions. He (maurice) explained to officer L. Bailey and everyone else present in the cell that officer S. Depriest and Lt J. Bowles had him sexually assaulted and tortured after he did not voluntarily sign instruments offerred to him by officer S. Depriest. He (maurice) further informed officer L. Bailey and others that Lt J. Bowles and SHU officers were trying or attempting to feminize him by forcing him (maurice) to wear pink women-s panties on his body, by physically violated beaten and sodomized, and subjecting him (maurice) to intrusions on his body privacy. Their strategy is to forcefully feminize black and white men in U.S.P. Lee which they dominate.

Officer L. Bailey and everyone else in the cell laugh at and "insulted" maurice. And they made it very clear and obvious to maurice that nobody cares about his (maurice) PREA (prison Rape Elimination Act) Claims and him (maurice) being tortured by officers. Everyone then exited the cell and only maurice remained in the holding cell.

About 20 minutes later Lt J. Bowles, Lt A. Johnson; and SHU officers and unknown staff members entered the holding cell. One officer rammed the force team's sheild into maurice's back while he faced the wall on his knees in handcuffs, shackles, chain (restraints). Lt J. Bowles, Lt A. Johnson and SHU officers began physically assaulting maurice by choking him and cutting off his air supply, ramming his face and head against the wall; pulling and yanking on the handcuffs, shackle and chain all of which caused intense pains and more damages to maurice's body. Lt J. Bowles then ordered maurice to sign the instrument offerred by officer S. Depriest; and Lt J. Bowles further stated to maurice that if he (maurice) fails to obey the order to sign he (maurice) will remain in restraints and SHU officers will continue tortureing him (maurice).

For over 24 hours maurice was denied food, sleep, clothing and medical attention by officers; and the U.S.P. Lee's SHU officers inflicted serious bodily injuries upon maurice which caused damages to maurice's body. The officer's actions that caused maurice's injuries is criminal because U.S.P. Lee's officers inflicted the injuries knowingly and intentionally. see Morissette, 342 U.S. at 250.

After Lt J. Bowles order to sign the instrument and his (Bowles) threat to continue tortureing maurice. under duress, threat and coercion maurice told Lt J. Bowles that he will sign the instrument. Lt J. Bowles and SHU officers and Lt A Johnson then forced maurice to walk facedown backwards in restraints, without clothing and shoes from the holding cell Z01-101 A range to the receiving and discharge department in the presence of multiple female staff personnel and inmate workers.

While in the receiving and discharge department officer S. Depriest place in front of maurice a instrument, that was not the same as the instrument offerred on July 30, 2020. When maurice attempted to read the instrument Lt J. Bowles grabbed and snatched the instrument from maurice's hand and ordered maurice to sign the instrument; maurice then signed the instrument without prejudice (without loss of rights).

After Lt J. Bowles seen what maurice wrote above his written signature, and after maurice told staff that officers sexually assaulted and tortured him Lt J. Bowles became angry with maurice and grabbed maurice's arm and neck pushed him facedown, and with the assistance of another officer, force maurice to walk backwards facedown back to the SHU A range holding cell 701-101. After Lt J. Bowles and officers exited the holding cell female and male staff approached the observation window pointing and laughing at maurice because Lt J. Bowles and SHU officers forced maurice to walk, in their presence, backwards facedown bent over foreward while wearing only a pair of womens panties that showed maurice's anus, penis and buttocks.

Around 2:15pm Officer L. Hornsby, while making a 15 making check on maurice, falsely claimed that maurice tampered with locking device. Specifically, Officer L. Hornsby falsely claimed that maurice twisted both his wrisks in an attempt to defeat the hand restraints and inflict self harm upon himself. Officer L. Hornsby then utilized his radio and called for assistance on A-range in the SHU holding cell 701-101. Officer L. Hornsby then told maurice to face the wall and get on his knees, maurice then did so. Officer then entered the holding cell and tackled, piled on top of maurice, then officers punched, grabbed maurice's throat and choked him cutting off his air supply.

Officers then placed maurice in a restraint chair and transported him to B-Range in a cell and place maurice in four point restraints on a concrete cement block.

There was no bed or mat on the concrete cement block. After officers secured Maurice on the concrete cement block they repeatedly punched Maurice's right side ribs as they began exiting the cell

Two (2) hours later, Lt J. Bowles, Officers T. Brooks, S. White, J. Martin, L. Hornsby and multiple unknown officers entered the B-Range cell. Officer T. Brooks then slams the force team's sheild on maurice's face, chest and stomach causing maurice to suffer chest pains, shortness of breath, possible chest contusion, busted bottom lip and face pains. Lt J. Bowles began talking to the officers while they all stood around maurice and officer T. Brooks putting his upper body weight on the force team's sheild smashing maurice's chest causing him to have difficulty breathing. Lt J. Bowles then says to the officers "I checked his files and it says he (maurice) was charged with a sex offense." Lt J. Bowles then paused for a moment then he said "but he was'nt found guilty though." The meeting continued for about 5 minutes then the officers began punching maurice's face and ribs. Officers then began exiting the cell except officer T. Brooks who then punched maurice's penis very hard. The indury hurt maurice so badly that maurice screamed, Officer T. Brooks then lifted the force team's sheild and struck Maurice's face with the bottom edge of the sheild by driving the shield in a downward motion into maurice's face inflicting intense pains. Officer T. Brooks then exited the cell.

After about 5 to 10 minutes maurice's eyes began to burn and tear up, and maurice heard a machine engine running. The engine sound came from the cell's fresh air vent, Maurice then realized that the officers were pumping tear gas into the cell through the ventilation system.

Two (2) hours later, Officer T. Books, Lt J. Bowles and multiple unknown officers entered the cell. Officer T. Brooks again, slams the force team's sheild on maurice's

Face, chest and stomach. And before the officers began beating (Physically assault) maurice again he (maurice) told the officers that he needs to speak with Lt Bellemy; maurice then further stated to the officers that he wants them to tell Lt Bellemy (SHU Lt.) that he (maurice) thought about it and he has made a decision. Lt J. Bowles then asked maurice "what decision did you make?" And maurice answered "I decided to ride out," and maurice said "I'm just gonna leave, no more agression is needed." Lt J. Bowles then stated to the officers "you see, sinkfield is a stupit motherfucker, but, he's starting to figure it out." Lt J. Bowles and officers began exiting the cell and officer T. Books again punched maurice's penis, but, harder then he punched the first time. Officer T. Brooks then lifted the force team's sheild and with bottom edge of the sheild struck maurice's face, causing damages and inflicting intense pains.

Every two (2) hours officers S. Turner, C. Newman, T. Thomas, Lt C. Davis, Lt S. LIVELY and multiple unknown officers would enter the cell, slam the force team's sheild on maurice's face, chest and stomach, repeatedly punch maurice's body. Officer S. Turner repeatedly grabbed maurice's throat and choked him cutting off his air supply. Lt C. Davis would walk on maurice's chest, stomach and stepped on maurice's penis, then Jumped up and down smashing maurice's penis with his feet/Boots, inflicting intense pains to maurice's chest, stomach and penis. Lt S. Lively would enter the cell and unlock the restraints connected to the steel bars on the concrete block and place maurice's arms in positions that inflicted intense pains to his arms and shoulders, then reconnect the restraints to the steel bars leaving maurice's arms in positions that inflicted intense pains. And Lt S. Lively would return two (2) hours later to change or switch maurice's arms into a different painful position while maurice lay in the four point restraints on a concrete block with no beding. Lt C. Davis with two (2) of his fingers grabbed and pinched maurice's skin on his left leg and injected a needle inbetween his two fingers and into maurice's leg where Lt C. Davis indected an unknown substance in maurice's body.

As the night went on the officers banged on the cell door and screamed at maurice calling him a gay nigger, and saying "you better no be asleep, I'm gonna beat your ass." Every two (2) hours the officers entered the cell and tortured Maurice while he was in four point restraints for 24 hours. U.S.P. Lee's SHU is operating in a manner of prison of war prisons that tortures its captives or prisoners. The officers tortured and sexually assaulted maurice, in the SHU, for 2 days and 12 hours.

Earlier that day (July 31, 2019 at around 2:30-3:00 pm) the nurse entered the cell (B-Range) with a camera recording, while maurice was in four point restraints. Prior to the nurse entering the cell, officers physically assaulted maurice. The officers threatened and warned maurice that if he report any induries to the nurse when he enters the cell they are going to torture him (maurice) and edit the video recordings of maurice's injury report to the nurse.

The nurse entered the cell and then asked maurice "do you have any induries?" Under threat, injury, duress and coercion maurice answered "no." At that time the officers who tortured and threatened and coerced maurice were standing all around maurice inside the cell while maurice lay on the concrete block, in four point restraints, without bed or mat, induried in need of medical attention and restrained and defenseless. When the nurse stopped the video camera recording and exited the cell maurice was ordered, by officers, to not fall asleep. And if found asleep by officers during 15 minute checks, officers told maurice that they will inflict serious bodily harm upon his body. The officers and supervisors exited the cell leaving maurice under orders to not sleep for 24 hours in four point restraints on the concrete cement block without mat or bed, food or water for 24 hours. The officers then pumped tear gas in the cell through the ventilation system, which burn maurice's eyes and caused a buildup of a unknown substance around maurice's eyes.

On August 1, 2019, at around 1:00 pm, officers and their

supervisors (Lt A. Johnson and other supervisors) entered the cell. One of the officers slamed the force team's sheild on maurice's face, chest and stomach. Lt A. Johnson and other supervisors the told maurice to not make anymore PREA claims against their officers. Lt A. Johnson and other supervisors told maurice, that if he do make anymore PREA claims against their officers, they will place maurice back in four point restraints on the concrete block for longer then 24 hours. The supervisors then asked maurice to agree to remain silent about the sexual assaults committed by officers and against his natural Person; and to agree to not pursue sexual assault and any other claims against their officers "in exchange" for being released from the four point restraints and allowed off the concrete cement block. Due to the extremely painful treatment and conditions in the SHU that maurice was being subject too, maurice told the supervisors that he will not make anymore claims.

The supervisor Lt A. Johnson then advised maurice that he will be let out of fourpoint restraints and off (let off) the concrete cement block in two (2) additional hours, then officers and supervisor exited the cell. At around 3:00pm SHU officers entered the cell and uncuffed maurice's wrisks from the steel bars and placed his wrisks back in handcuffs that was covered by a small black steel box and hooked up to a chain that was wrapped around maurice's body and secured with a key lock. The officers then uncuffed maurice's legs and placed shackles on them. When officers were moving maurice's body (arms, legs and upper body) it was very painful. Officers had to help maurice move his arms and legs, and to sit up on the concrete cement block. Officers had to assist maurice with standing. The officers then escorted maurice to B-range holding cell. He (maurice) had a very difficult time walking because his legs were swollen, in pain, lacking proper blood circulation, and the officers placed the shackles on maurice's legs to tight.

After two (2) hours in B-range holding cell officer C. Hamilton and 2 other officer entered the cell, after maurice got on his kees and faced the rear wall as instructed by Officer C.

Hamilton". He (Officer C. Hamilton) began removing the shackles, handcuffs, and chain. After Officer C. Hamilton removed the restraints he sexually assaulted maurice by inserting his finger in maurice's rectum then pulling the top of the back of the womens panties, that maurice was forced to **wear**, back and released the panties which caused the **panties** to snap against the top of maurice's buttocks. Officer C. Hamilton and the other 2 officers then began laughing at maurice. Officer C. Hamilton then ordered maurice to face the wall until they exit the cell and before the officers fully exited the cell Officer C. Hamilton said to maurice, "no more PREA claims against officers," then he closed and locked the cell door.

About an hour later maurice was escorted, in panties no clothing, to C-range cell 241. SHU officers would not give maurice clothing, shoes and a mat. Two (2) hours later, Nurse Practitioner Officer L. Caudill approached the cell door and provided maurice with only a Health Evaluation Questionnaire but no pen or pencil to write with, which prevented maurice from reporting his injuries and health concerns to medical staff by the next day which was the deadline specified by Officer L. Caudill. Since maurice had no mat he had to sleep on the steel bunk bed frame for the rest of the day and night, up to the time he was released from the SHU.

Officer E. Heaney then delivered 4 of 6 incident reports. All six incident reports were written and issued by officers in retaliation for maurice's PREA claim made against officers on July 30, 2019; and to falsely claim accusations that would justify their use of force (excessive force) against maurice on July 30, 31, 2019 and August 1, 2019, when there was justifiable reasons to use any force against maurice.

On August 2, 2019 maurice was released from the SHU and assigned to housing unit K cell 319. While maurice was being prepared for release from the SHU, Lt J. Bowles threatened to harm maurice if he (Lt J. Bowles) finds out (discover) maurice reported anything that happened to him (maurice) in the SHU; and, maurice was

then released and he reported to the housing Unit K as ordered by officers.

Not more then two weeks later maurice received a call out for medical; and, after maurice reported to the medical department Nurse practitioner N. Smith conducted a physical on maurice. During the physical maurice reported to Nurse N. Smith that he had been sexually and physically assaulted by officers in the SHU. He (maurice) reported to Nurse N. Smith that he was urinateing blood and that his penis has been hurting since officer T. Brooks sexually assaulted him by punching maurice's penis repeatedly. He (maurice) showed Nurse N. Smith the scars and soars on his legs, just above his ankles, and on his wrisks. And Nurse practitioner N. Smith refused to document and photograph maurice's injuries, and his claims of ~~sexau~~ sexual assault and physical assault were not clearly documented by Nurse N. Smith, nor would Nurse N. Smith provide maurice treatment for his injuries.

Nurse N. Smith then attempted to compel maurice to sign a instrument wherein stating that maurice does not want to be tested by the CDC agency. Since maurice would not sign the instrument, Nurse N. Smith then placed a unauthorize signature on the instrument and refused to provide maurice with a copy of the instrument after his request. After maurice witnessed Nurse N. Smith conduct including her refusal to provide medical treatment to maurice, he determined that it is not in his best interest to seek any medical assistance at U.S.P. Lee's medical department. A few months later Nurse practitioner Meade placed maurice on the medical call out list and after maurice reported to the medical department, Nurse meade offerred the same instrument to maurice that Nurse N. Smith offerred months before. Nurse meade then called a officer to arrest maurice if he did not sign the instrument upon demand, maurice then signed the CDC testing instrument without prejudice (without loss of rights) under threat of being arrested, sexually and physically assaulted by U.S.P. Lee's officers in the SHU again for not

signing an instrument offerred to him by a white woman.

On August 05, 2019, Officer L. Collins held a hearing and found maurice guilty of two (2) refusing to obey an order charges (code of conduct 307) and one (1) Being insolent to staff member charge (code of conduct 312). Officer L. Collins imposed sanctions, lost of 42 days good conduct time; lost of email communication for 90 days. On August 06, 2019, Office J. Brown held a hearing and found maurice guilty of disruptive conduct (code of conduct 299). Office J. Brown imposed sanctions lost of 27 days good conduct time, lost of phone communication for 180 day. See maurice's disciplinary record for more details.

Officer B. Calton, on or about August 06, 2019, did tell multiple inmates that maurice was found guilty of gross sexual imposition and kidnapping in 2002 in the Franklin County Common Pleas Court and that a child was involved. Case Manager Officer B. Calton also told multiple inmates that maurice is a child molester beat him (maurice) up and get him out of the Unit.

Officer B. Calton attempted to cause physical bodily harm to maurice by having multiple inmates physically assault maurice, based on false information. Officer B. Calton action s created a substantial risk of serious bodily harm to maurice. After maurice provided the inmates with his full name and birth date, the inmates used their resources and discovered that maurice was not found guilty of gross sexual imposition and kidnapping, and that maurice is not a child molester or rapist. The inmates discovered that officer B. Calton was trying to trick them into doing the officers dirty work, that is, physically assaulting maurice. The inmates knew then that had they attacked maurice, the officers would have claimed that all the injuries and scars that maurice have was a result of the attack by the inmates.

U.S.P. Lee's officers L. Collins and J. Brown suspended maurice's phone and email access only to prevent maurice from contacting his family and Federal authorities to report the sexual and physical

assaults and seek relief. There were no evidence presented to support officers J. Brown and L. Collins guilty findings, because there is none. The entire time that maurice has been in the custody of the Federal Bureau of prisons, he has not been able to make any phone calls; and, maurice has not, upon multiple requests, been provided with any of the forms needed to seek the available administrative remedies.

11. A violation of the Eighth Amendment's command against cruel and unusual punishment by the defendants acting under color of federal authority give rise to a federal cause of action for damages consequent upon the defendants's unconstitutional conduct. Federal Courts have the power to award damages for violations of constitutionally protected interest, and that the traditional judicial remedy for damages was appropriate to vindicate the personal interest protected by the Eighth Amendment. Where legal rights have been invaded, and federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done. The essence of civil liberty consists in the right of every individual to claim the protection of the laws whenever he receives an injury. See Bivens v. Narcotics, agents, 29 LED 2d 619, 403 U.S. 388.

A prisoner has a Constitutional right to be free from cruel and unusual punishment, and a prison guard has a concomitant constitutional duty to protect the prisoner from such harm. See United States v. Serrata, 425 F.3d 886.

12. Pierce the Corporate veil, the Plaintiff respectfully moves this Honorable Court for Judicial act(s) imposing strict personal liability on the defendants. The common law principles to pierce the corporate veil and hold the defendants personally liable for the debt mentioned above (claim for relief) must and shall apply. This Honorable Court can and should allow the Plaintiff to pierce the corporate veil in order to provide a meaningful remedy (ies) to the plaintiff for injuries and damages he suffered and to avoid injustice.

The Plaintiff, maurice j sinkfield, was unjustly harmed by the defendants and it will be appropriate to strike through the general liability sheild and get at the defendants because they have so misused and disregarded the corporate form, and a corporate entity may be disregarded in the interest of public convenience, fairness and equity. The defendants tortured and sexually assaulted maurice j sinkfield, and they ignored the clear signs of abuse and neglect breaching reasonable standards of care and their constitutional and statutory obligations.

The Prison conditions and treatment that maurice was subjected to created substantial and serious pshchological, emotional and bodily harm to maurice.

Virginia law imposes a particularly "rigorous standards" of proof of, among other things, "some legal wrong" before a claimant may pierce the veil and recover from a corporate officer. See Perpetual Real Estate Servs., Inc. v. Michaelson Properties, Inc., 974 F.2d 545, 548-49 (4th Cir. 1992). Less stringent standards to piercing the corporate veil applies in this tort case.

## CONCLUSION

For the foregoing reasons the Plaintiff respectfully request this Honorable Court allow him to proceed to jury trial.

## AFFIDAVIT

That I, maurice j sinkfield, a natural person, do hereby swear under the penalty of death under the laws of GOD, the Creator of Man, that all facts stated within the foregoing complaint is the truth and nothing but the truth so help me God, and

That I, maurice j sinkfield, a natural person, do hereby swear under the penalty of perjury under the laws of the United States that all facts stated within the foregoing complaint is the truth and nothing but the truth, and

Further affaint sayth not.

Done this 10th day of May____ ,2020.

Respectfully Submitted,
Maurice Sinkfield
Maurice sinkfield
Natural Person

From: Maurice J Sinkfield
C/O U.S.P. Lee (63996060)
P.O. BOX 305
Jonesville, Virginia 24263

CS

7019 1120 0000 1

PLACE STICKER AT TOP OF ENVEL
OF THE RETURN ADDRESS, FOLD

CERTIFIED

7019 1120 0000 6

Special /Legal Mail
Confidential



164 6244

E TO THE RIGHT
DOTTED LINE

AIL®

164 6244

o: Office of the Clerk
U.S. District COURT W. D. Virginia
210 Franklin Road, room 540
Roanok, Virginia 24011